UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARRO VIRGIL,

    Plaintiff,                                         Hon. Wendell A. Miles

v.                                                         Case No. 4:06-CV-21

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 26 years of age at the time of the ALJ's decision. (Tr. 14). She successfully completed high school and worked previously as a landscaper, painter, cook, and housekeeper. (Tr. 14, 65, 73-77).

Plaintiff applied for benefits on September 5, 2002, alleging that she had been disabled since April 1, 2000, due to lupus and rheumatoid arthritis. (Tr. 43-45, 64). Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 28-42). On February 19, 2004, Plaintiff appeared before ALJ Larry Meuwissen, with testimony being offered by Plaintiff and vocational expert, Heather Benton. (Tr. 528-61). In a written decision dated July 19, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 14-23). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

On April 29, 2000, Plaintiff gave birth to her first child. (Tr. 477-520). Following childbirth, Plaintiff began to experience "severe inflammatory arthritis, which seemed to be most prominent in the hips and SI areas." (Tr. 278).

On June 2, 2000, Plaintiff participated in an MRI examination of her brain, the results of which were "normal." (Tr. 225). The results of a bone scan, performed the same day, revealed "minimally asymmetric, increased activity in the left sacroliliac joint and right acetabulum." (Tr. 224). The examination revealed "no other abnormalities." *Id.*

On June 3, 2000, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed no evidence of spinal stenosis, herniated disc, or nerve root compression. (Tr. 223). There was likewise no evidence of inflammatory process in Plaintiff's lumbar spine, hips, or sacroiliac joints. *Id.* X-rays of Plaintiff's chest, taken on June 6, 2000, were "normal." (Tr. 222).

Dr. James Taborn concluded that "lupus seemed to be the diagnosis that most closely explained [Plaintiff's] clinical picture," but recognized that the "distribution of [Plaintiff's] joint inflammation is atypical" for lupus. (Tr. 278). Plaintiff participated in physical therapy from June 9, 2000, through July 14, 2000. (Tr. 113-73).

On June 14, 2000, Plaintiff was examined by Dr. Rose Lovio-Pascoe. (Tr. 213). Plaintiff reported that her hip pain was "improving." Range of motion testing revealed "slightly" diminished flexion, but otherwise "full range of motion." The doctor also reported that Plaintiff's gait was "much improved." *Id.*

When she was examined on June 20, 2000, Plaintiff reported that she was feeling "much better." (Tr. 206). She reported that she experienced "a little bit of pain when she walks a lot," but otherwise was experiencing "no significant pain" or "other problems." *Id.*

On June 22, 2000, Plaintiff was examined by Dr. Taborn. (Tr. 278-80). The results of a physical examination were "normal" except for swelling in the knees and pain on hip rotation.

4

(Tr. 278). Plaintiff reported that she had experienced a "substantial improvement" in her pain. The doctor instructed Plaintiff to take Tylenol or ibuprofen. *Id.*

X-rays of Plaintiff's abdomen, taken on July 14, 2000, were "normal" with no evidence of soft tissue masses, pathologic calcifications, or abnormal bony structures. (Tr. 221).

On July 21, 2000, Plaintiff was examined by Dr. Taborn. (Tr. 276-77). The results of an examination revealed some "mild low back discomfort with rotation of the hips," but was otherwise "normal." (Tr. 276). Plaintiff reported that she "has continued to feel well." Dr. Taborn concluded that Plaintiff's "recent flare up has subsided." *Id.*

On August 3, 2000, Plaintiff reported that she "feels very well" with "no pain." (Tr. 198). The doctor characterized Plaintiff's lupus as "stable." *Id.*

On August 18, 2000, Plaintiff was examined by Dr. Lovio-Pascoe. (Tr. 197). Plaintiff reported that she was "stable" and was "feeling very well with no complaints." She also reported that she was not taking any medications. Plaintiff walked with a "steady" gait and the results of an examination were unremarkable. *Id.* On September 28, 2000, Plaintiff reported that she was "doing well" with "no complaints." (Tr. 196).

X-rays of Plaintiff's right lower extremity, taken on February 4, 2001, revealed no evidence of fracture or abnormality. (Tr. 220).

On May 10, 2001, Plaintiff was examined by Dr. Peter Chang. (Tr. 193). Plaintiff reported that she was five months pregnant and experiencing "some" hip pain. Plaintiff exhibited a "full range of [hip] motion" with "no significant tenderness." The doctor concluded that Plaintiff's hip pain was related to her pregnancy. *Id.*

5

On October 24, 2001, Plaintiff was examined by Dr. Chang. (Tr. 192). Plaintiff reported that she was experiencing bilateral hip pain. An examination of Plaintiff's hips revealed "full range" of motion with no evidence of tenderness. There was likewise no evidence of radicular symptoms. Plaintiff was instructed to perform stretching and range of motion exercises. *Id.*

On April 22, 2002, Plaintiff was examined by Dr. Chang. (Tr. 185). Plaintiff reported that she was experiencing bilateral hip pain. An examination of Plaintiff's hips revealed "mildly limited" range of motion with "no significant tenderness." Plaintiff was instructed to take Ibuprofen and use a heating pad. *Id.*

On August 7, 2002, Plaintiff was examined by S. Kay Jones, R.N. (Tr. 182). Plaintiff reported that she was experiencing hip pain. Plaintiff walked with a "steady" gait and was able to squat and recover "without difficulty." Straight leg raising was negative and Plaintiff exhibited 5/5 strength. Palpation of Plaintiff's lumsosacral spine revealed "minimal" tenderness and Plaintiff was also able to heel and toe walk "without difficulty." *Id.* On August 22, 2002, Plaintiff reported that her hip was hurting just a "little bit." (Tr. 179).

X-rays of Plaintiff's sacroiliac joints, taken on August 26, 2002, revealed evidence of "some" sclerosis of the left sacroiliac joint. (Tr. 219).

On September 24, 2002, Plaintiff completed a questionnaire regarding her activities. (Tr. 87-92). Plaintiff reported that she was experiencing pain in her lower back, hips, and right leg. (Tr. 87). She reported that she can stand for 20 minutes, lift/carry 25 pounds, and experiences no limitations using her arms or hands. (Tr. 89). Plaintiff reported that every day she cooks, mops, washes dishes, vacuums, washes laundry, and cares for her two children. (Tr. 90). She also reported that she shops, reads, watches television, and goes dancing. (Tr. 90-91).

On November 14, 2002, Plaintiff participated in IQ testing, the results of which revealed that she possessed a verbal IQ of 80, a performance IQ fo 69, and a full-scale IQ of 73. (Tr. 263). Plaintiff's performance placed her in the "borderline classification of intellectual functioning." *Id.* The test results also revealed that Plaintiff "probably has a mild strength in common sense reasoning skills as applied to social situations." (Tr. 264).

On November 26, 2002, Dr. John Pai completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 289-302). Determining that Plaintiff suffered from borderline intellectual functioning, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.05 (Mental Retardation) of the Listing of Impairments. (Tr. 290-98). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 299). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, and experienced moderate difficulties in maintaining concentration, persistence or pace. The doctor did not indicate whether Plaintiff experienced episodes of decompensation. *Id.*

Dr. Pai also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 285-88). Plaintiff's abilities were characterized as "moderately limited" in five categories. With respect to the remaining 15 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.*

On January 23, 2003, Plaintiff was examined by Dr. Taborn. (Tr. 344-45). Plaintiff reported that she was experiencing low back pain which radiated into her thighs. (Tr. 344). Plaintiff

denied experiencing any numbness, tingling, or other neurologic symptoms. Plaintiff also denied experiencing symptoms in her upper extremities or "other systemic symptoms." The results of a physical examination were "normal except for a small umbilical hernia." The doctor observed "no red, warm or swollen peripheral joints and straight leg raising was negative." Plaintiff complained of severe low back pain when arising from a lying position, but an examination of Plaintiff's back revealed only "mild" tenderness without swelling. Plaintiff exhibited "normal" deep tendon reflexes and no evidence of upper motor neuron signs. Dr. Taborn concluded that Plaintiff's symptoms were not related to lupus, but were instead related to her "lumbar spine, SI joints or hips." *Id.*

On February 19, 2003, Plaintiff participated in an MRI examination of her hips, the results of which revealed a "moderate amount of free fluid within the pelvis." (Tr. 332). There was, however, no evidence of fracture, misalignment, or degenerative changes and the soft tissue structures were "normal including symmetric musculature." An MRI examination of Plaintiff's lumbar spine, performed the same day, revealed a degenerated disc at L5-S1 with a "mild" central bulge which did not displace the nerve roots. *Id.* Plaintiff also participated in an ultrasound examination of her pelvis, the results of which were "normal." (Tr. 331).

On February 18, 2004, Dr. Shekhar Thakur reported that Plaintiff suffers from fibromyalgia type syndrome, degenerative joint disease, chronic low back pain, bilateral hip pain, and depression. (Tr. 340). The doctor did not identify any limitations in Plaintiff's ability to function or perform work activities. *Id.*

At the administrative hearing Plaintiff testified that she can stand for 10 minutes, sit for 20 minutes, walk "maybe a block or two," and lift/carry 10-15 pounds. (Tr. 540-42). Plaintiff testified that she does not experience any side effects from her various medications. (Tr. 540).

Plaintiff reported that she experiences "a lot" of flare ups of her lupus which are so severe that she cannot walk for up to one week. (Tr. 544).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) borderline intellectual functioning and (2) lupus. (Tr. 18). The ALJ concluded that these

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 20-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[2] subject to the following limitations: (1) she can stand for only 20 minutes at one time and only 2 hours total during an 8-hour workday; (2) she can sit for 6 hours during an 8-hour workday; (3) she cannot climb, crawl, squat, or kneel; and (4) she cannot perform work which exposes her to loud noise.  (Tr. 19).  As for Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences slight restrictions in the activities of daily living, mild difficulty maintaining social functioning, moderate deficiencies in concentration, persistence or pace, and has never experienced extended periods of decompensation. *Id.*  After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See*

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567.  Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday."  20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

*Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Heather Benton.

The vocational expert testified that there existed approximately 37,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 555-57). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988).

a. The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff asserts that her testimony regarding her pain and limitations demonstrates that she is disabled. The ALJ discounted Plaintiff's subjective allegations of pain and disability, however, concluding that Plaintiff "was not entirely credible." (Tr. 18).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should

not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments.  However, as the ALJ properly concluded, the objective medical evidence fails to confirm Plaintiff's subjective allegations of pain and limitation.  The objective medical evidence also fails to demonstrate that Plaintiff suffers from impairments which can reasonably be expected to produce disabling pain and limitation.  In this respect it must be noted that none of Plaintiff's care providers have imposed on Plaintiff limitations which are inconsistent with the ALJ's RFC determination.  Moreover, Plaintiff's reported activities are inconsistent with her subjective allegations of pain and limitation.  In sum, there exists substantial evidence to support the ALJ's credibility determination.

b.   The ALJ Properly Assessed Plaintiff's Impairments and the Medical Evidence

Plaintiff asserts that she suffers from lupus and fibromyalgia.  Plaintiff further asserts that the ALJ failed to analyze these particular impairments in accordance with Social Security Ruling 99-2p.  First, there is no evidence that Plaintiff suffers from fibromyalgia.  Moreover, Social Security Ruling 99-2p provides guidance in evaluating cases involving chronic fatigue syndrome.  *See* Social Security Ruling 99-2p: Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS), 1999 WL 251998 (Social Security Administration, April 30, 1999).  Since there exists no evidence that Plaintiff suffers from chronic fatigue syndrome, the Court fails to see the relevance of this particular Ruling or the significance of the ALJ's alleged failure to comply with such.

Plaintiff also asserts that the ALJ failed to properly consider the combined effects of all her impairments.  The Court is unpersuaded.  The ALJ discussed Plaintiff's impairments at

14

length, including those impairments found to be less than severe. It is clear from the ALJ's discussion that he considered all of Plaintiff's impairments when determining Plaintiff's RFC. Moreover, the ALJ's RFC determination is consistent with the objective medical evidence as well as Plaintiff's reported activities.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  January 25, 2007                                  /s/ Ellen S. Carmody                
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge